## BRYANT *v.* THOMAS *et al.*

1. Where a petition by a creditor against his debtor and other defendants is brought in the county of the debtor, a part of the relief sought being to subject the land and for that purpose to obtain a receivership and sale of all the property of the debtor, and an accounting from another resident creditor as to rents and profits arising from certain property of the debtor, which it is alleged the creditor, under a collusive arrangement with the debtor, is operating and misapplying the profits to the payment of claims inferior to a special lien of the plaintiff on the property, another creditor, who is proceeding by mortgage foreclosure to sell a part of the land involved in the relief sought by the plaintiff against the resident defendants, may properly be made a party defendant to the petition, although a non-resident of the county in which it is brought.

2. In such a case, an order appointing a receiver for the property and directing its sale by him was inconsistent with an order granted in the same case, on the same facts, refusing to enjoin the holder of the mortgage fi. fa. from selling a part of the property under judicial process, the court having jurisdiction of all the parties, and no exception being taken to the order first above described.

FEBRUARY 20, 1915.

Petition for injunction, receivership, etc. Before Judge Rawlings. Jefferson superior court. February 14, 16, 1914.

C. S. Bryant filed an equitable petition in the superior court of Jefferson county against his debtor W. A. Thomas, and other defendants, a number of whom were also creditors of Thomas. The main defendant was a resident of Jefferson county, as were also certain named creditors. Other defendants were non-residents of that county, among them being the firm of Hunter, Pearce & Battey, who were residents of Chatham county. Petitioner held a judgment against Thomas for certain amounts (aggregating about $3,000), which was founded on a deed given by Thomas to secure a debt, and said judgment fixed a special lien on certain tracts of land described in the deed. Hunter, Pearce & Battey held two mortgages, one dated February 27, 1911, and the other April 16, 1912, which were recorded, respectively, March 11, 1911, and April 30, 1912, in Washington county. The mortgages were given on what are known as the Holland, the Josey, and the Bailey places. The last named is not included in petitioner's deed, but the first two named are, and on them petitioner has a special judgment lien. Hunter, Pearce & Battey had foreclosed their mortgages, caused the mortgage fi. fa. to be levied on the lands, and the sheriff had advertised them for sale. Petitioner believed that the Bailey place,

on which he had no special lien, would bring a sufficient amount to pay the debt of Hunter, Pearce & Battey, were it not for the fact that the wife of the debtor and one Jim Brinson (who were also named as defendants) claimed title to the Bailey place, and these claims would cause the place to be sacrificed for less than its value, thus depriving petitioner and other creditors of their security over the Josey and Holland places; and the Bailey place should be subjected to the fi. fa. of Hunter, Pearce & Battey. Smith Brothers & Co., who were resident defendants, held a security deed which embraced, with other property, the Holland and Josey places, their deed purporting to be on consideration of $3,683, and having been recorded prior to the record of petitioner's deed. During the year 1913, Smith Brothers & Co. operated all the farms of W. A. Thomas; and petitioner asks an accounting from them of the rents, issues, and profits of said farms, and alleges that the profits therefrom should be appropriated to the payment of their claim pro tanto. By amendment it was alleged that the appropriation of the rents and profits of the farms by Smith Brothers & Co. was under a collusive arrangement between W. A. Thomas and them, whereby they were permitted to appropriate such profits to claims of an inferior dignity to the claims of petitioner and other creditors. By the petition and its amendments, the priority of the mortgages of Hunter, Pearce and Battey over the lien of petitioner was attacked on the grounds, that they were not attested in such manner as to entitle them to be recorded; that the sums due on the two mortgages had been consolidated and a new note taken therefor, and the two mortgages, securing debts due at different times and having liens of different dignity, could not be consolidated into one note and the mortgages foreclosed for a debt not described therein; and that the acceptance of the note was a settlement of the debts described in the mortgages, and prevented their foreclosure for the debt evidenced by the new note.

The foregoing is a partial summary of the allegations of the petition. It is of considerable length and sets forth in detail various debts to named creditors, liens held for the security thereof, etc., a general statement as to which is thus made in the petition: "Petitioner alleges, that said W. A. Thomas is hopelessly insolvent; that all parties to this petition, or most of them, hold judgments, and many of them hold mortgages or security deeds over the same

property; that there are many conflicting claims, rights, and equities; that it is necessary to resort to equity to avoid a great variety of claims, suits, and actions at law; many creditors are now proceeding with mortgage foreclosures, levies, etc., while other parties are interposing claims; and that there is a multiplicity of suits and will be in various courts of Washington and Jefferson counties." Among the various prayers of the petition, it was asked: "That the court appoint a receiver to take possession of all the property of said W. A. Thomas;" also "That this court order the said receiver so appointed to sell all of said property upon such terms as the court may prescribe; and that all liens over the property so sold be transferred to the fund, as well as all claims arising under security deeds, so that the unencumbered title be sold freed from all liens and encumbrance." With respect to Hunter, Pearce & Battey, it was asked that they be restrained and enjoined from selling under their mortgage fi. fas. the property levied upon, and that the sheriff of Washington county and his deputy be enjoined from further advertising or selling the same.

All the defendants who were creditors filed answers. The debtor, W. A. Thomas, admitted practically all the allegations of the petition, including the allegation that he was insolvent; but he averred that the plaintiff was not entitled to the relief prayed for, because all the matters concerning which he sought relief could be determined and adjudicated in a court of law. Some of the creditors demurred to the petition; some merely asserted their claims of lien and asked for their establishment; others, in addition to this, joined in the prayer for injunction and receiver, and still others in the prayer for a receiver only. Hunter, Pearce & Battey demurred to the petition, on several grounds, among them being, that, in so far as the petition related to them, it was an effort to make a collateral attack upon the judgment obtained by them, which a court of equity had no jurisdiction to entertain; and that a court of equity will not enjoin the sale of property under a mortgage foreclosure at common law; "that the court is without jurisdiction so far as relates to these defendants, as the enforcement of the judgment which they seek to enjoin was obtained in the superior court of Washington county, and all of the land is located in Washington county, and none of these defendants are residents of Jefferson county, but all, as shown by the petition, are residents of Chatham

county." They also filed a plea, in which they raised the question
of the court's jurisdiction as to them. The orders subsequently re-
ferred to were passed after interlocutory hearing, the bill of excep-
tions reciting that the case was heard "upon the original petition,
and the amendments allowed thereto, and the answers of the sev-
eral defendants, and no evidence was introduced at the hearing by
any of the parties, the judge having before him only the pleadings,
upon which pleadings, as aforesaid, he denied the injunction and
appointed a receiver." The ruling excepted to is the denial of an
injunction as to Hunter, Pearce & Battey.

*Jordan & Harris,* for plaintiff.

*Evans & Evans, Hardwick, Wright & Hyman, W. L. Phillips,
R. N. Hardeman,* and *Price & Price,* for defendants.

HILL, J. (After stating the foregoing facts.)

1. One of the contentions of the defendants is that the refusal
to enjoin Hunter, Pearce & Battey was necessarily right, for the
reason that the court had no jurisdiction over them. In their brief
they say: "The only parties against whom any substantial relief
was prayed were the plaintiffs in fi. fa., Hunter, Pearce & Battey;
the other parties were merely nominal parties." The action was
brought in the county of the residence of the debtor defendant,
W. A. Thomas. One of its chief purposes was to obtain a receiver-
ship over all of his property, and to have it sold by an order of
court, divesting the various liens and conflicting claims against it,
and transferring them to the funds, and to settle in one suit the
rights of all creditors. Substantial relief was certainly sought
against the debtor himself. Also, Smith Brothers & Co. were resi-
dents of the county where the suit was filed, and as to them sub-
stantial relief was sought. It was alleged that under a collusive
arrangement with the debtor they were operating all of his farming
properties, and were being allowed to appropriate to claims against
the debtor, inferior to the special lien of petitioner, the rents and
profits from these properties, which should in equity be applied pro
tanto to the extinguishment of the lien of the deed to secure a debt
held by them and embracing the property on which petitioner's
lien rested; and they were called on to make an accounting for the
purpose of having the profits thus applied. The property on which
petitioner claimed a special lien consisted of what was known as
the Holland and Josey places, and these two places were included in

the mortgages of Hunter, Pearce & Battey which they were proceeding to foreclose, and from which action it was sought to enjoin them. The priority of these mortgages over the lien of petitioner was attacked, as well as the validity of the foreclosure. Thus it will be seen that substantial equitable relief was sought against at least two of the resident defendants, involving the land which Hunter, Pearce & Battey were seeking to sell under judicial process. The question of whether the attacks made on the priority of their lien, or the validity of their foreclosure proceedings, were such that they could be successfully asserted is not the proper criterion by which to determine whether they could be brought in as parties defendant to a general bill seeking to have adjudicated in one action the various rights of creditors of an insolvent debtor. The nature of the attacks, and their sufficiency in law, might be reasons why the court should deny the relief sought by the creditor, but would not prevent the court from obtaining jurisdiction over them for the purpose of passing on these matters, in a suit like this, where it is sought to put in the hands of a receiver the property they are seeking to sell, and to adjudicate the relative rights of other creditors with respect thereto. Substantial relief being asked against resident defendants, involving the lands upon which their levy and sale was proceeding, they could properly be made parties defendant to a suit of the nature with which we are dealing.

2. The bill of exceptions recites that the court, acting upon the pleadings only, "denied the injunction and appointed a receiver." A restraining order was in force against Hunter, Pearce & Battey, and the order with respect to them was "that the injunction, so far as the same relates to the defendants Hunter, Pearce & Battey, be and the same is dissolved." The order appointing a permanent receiver provided: "Said receiver is hereby authorized and required to sell all of the property of the said defendant, W. A. Thomas, such sale or sales to be confirmed and made subject to the confirmation of the court. The said receiver shall keep a separate account of the fund arising from the sale of each piece of property; and all liens of every kind, including security deeds, and claims of every kind shall be transferred to the fund, said property to be sold free from all incumbrances, and the purchasers thereof to take title freed from all liens or claims against W. A. Thomas." It further provided: "Said receiver shall sell

all lands situated in Washington county before the court-house door in said county, after four weeks advertisement in the legal organ of Washington county." It will therefore be seen that the court, in passing the receivership order, was acting in the same case and on the same state of facts, and was dealing with the same lands the sale of which at the instance of Hunter, Pearce & Battey it was sought to enjoin. The record shows that when issuing a rule nisi on the petition, the judge had appointed a temporary receiver of all the property of the defendant and issued a restraining order as prayed against Hunter, Pearce & Battey. At the time of the interlocutory hearing, these lands were already in possession of the court, through its temporary receiver; and the court, by appointing a permanent receiver, made that possession permanent, and specially directed the manner of their sale, providing that all claims of liens should be divested by the sale and transferred to the proceeds arising therefrom. This order was not excepted to by any one, and is of full force. It was inconsistent to release Hunter, Pearce & Battey (they being under the jurisdiction of the court) from restraint as to a levy and sale by them of property already in charge of a receiver appointed by the court, and also to grant an order giving the receiver permanent possession and control of the property, and directing its sale by him in a specific manner. Thus dealing with the property excludes the propriety of leaving Hunter, Pearce & Battey to proceed further against it independent of the present suit. The court, having them before it as parties, and having full control and disposition of the res involved in the injunction sought against them, should not have granted an order which apparently left them free to proceed against the property by independent levy and sale; but should have passed such protective order as would leave no doubt that they were prohibited from interfering with property over which the receiver was given full power of control and disposition. As stated, the orders are wholly inconsistent; and regardless of what effect the receivership order would have to prevent any attempted interference with the property on the part of Hunter, Pearce & Battey, the order purporting to release them from restraint should not be allowed to stand. To do so might give rise hereafter to disputes as to its legal effect on the rights of the parties, all of which, under the uncontested order of receivership, are to be determined in the present proceedings. The judgment of the

court below is therefore reversed, direction being given that the court enter an appropriate order protecting the property in charge of the receiver from being interfered with by Hunter, Pearce & Battey.

*Judgment reversed, with direction. All the Justices concur, except Fish, C. J., absent, and Evans, P. J., disqualified.*